## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| In re: | ) |
| | ) |
| CAROL A. JOHNSON, | ) Case No.: 19-00033-GS |
| Debtor. | ) Chapter 13 |
| | ) |

## MEMORANDUM DECISION DENYING CONFIRMATION
## OF DEBTOR'S CHAPTER 13 PLAN

Debtor Carol A. Johnson (Debtor) seeks confirmation of her chapter 13 plan (Plan), which proposes to apply any payments received from the Alaska Permanent Fund Dividend (PFD) over the term of her plan in excess of $1,000.00 per year as a "pre-payment" to her monthly plan payments.[1] The chapter 13 trustee (Trustee) has objected.  In her supplemental brief, Debtor succinctly summarizes the dispute before the court: "Trustee wants the excess [PFD] proceeds to be used for increased distributions to creditors.  Debtor wants to use the excess to reduce her future monthly payments."[2]   However, Debtor's characterization of Trustee's position is not quite accurate.  Trustee notes that the post-petition PFDs are property of the chapter 13 estate and argues that they must be turned over for distribution.  This is currently required in the local chapter 13 plan form.  Debtor has complied with the local plan and committed to turn over $1,000.00 annually from the post-petition PFD payments.  But Debtor also seeks to require Trustee to apply any additional amounts received from the PFD beyond $1,000.00 as prepayment of her Plan obligation. For the reasons set forth below, the court will deny confirmation of the Plan with leave to amend.

---

[1] ECF No. 18.
[2] ECF No. 26, p. 4.

## A.    BACKGROUND

### 1.    The Alaska Permanent Fund Dividend

The Alaska Constitution created a "permanent fund" to receive a certain percentage of the proceeds of state oil royalty revenues which must be invested into approved income-producing investments.[3]   From the Alaska Permanent Fund, a portion of these investment earnings are distributed annually to qualified Alaska residents as the PFD.[4]   The amount of the PFD varies based on the amount of the Fund's realized investment earnings over a five-year period, and the number of resident applicants.  Alaska residents have received a PFD every year since 1982, and the amount has varied from as low as $331.29 to as high as $2,072.00 in 2015.[5]   As noted in Debtor's briefing, Alaska has recently used a portion of the PFD to fund the state's operations, thereby decreasing the distributions in 2016 and 2017 to $1,022.00 and $1,100.00 respectively.[6] The 2018 PFD, paid in October 2019, was $1,600.00.[7]   As also noted by Debtor, Alaska's current governor has undertaken to substantially increase the annual PFD payment.[8]   While the PFD is now well established, the actual amount of the annual payment may vary considerably, especially over a five-year period.

### 2.    Debtor's Bankruptcy Case

On January 31, 2019, Debtor filed her voluntary chapter 13 bankruptcy petition.  In her Schedule I, Debtor listed $7,082.42 in monthly income, comprised of $2,039.50 per month from

---

[3] Alaska Const. art. IX, § 15.
[4] AS § 43.23.005, AS 43.23.025.
[5] *Summary of Dividend Applications & Payments, available at* https://pfd.alaska.gov/Division-Info/Summary-of-Applications-and-Payments (last visited August 1, 2019).  The court takes judicial notice of the PFD payment history pursuant to Fed. R. Evid. 201.
[6] ECF No. 26, p. 3.
[7] *Id.*
[8] *Id.*

Social Security and $4,876.25 per month from retirement/pension income.  Debtor also included $166.67 in monthly income derived from PFDs, which translated into an annual PFD payment of $2,000.04.[9]

Debtor listed her monthly expenses at $6,409.47.  This results in monthly net income of $672.95.[10]  Per Debtor's Official Form B 122C-1, her income is just above the median income for a single person household in Alaska, requiring her to commit to a five-year plan period.[11]  Debtor's Official Form B 122C-2 calculates her monthly disposable income at $210.63.[12]

On February 14, 2019, Debtor filed her Plan.  According to her liquidation analysis, she disclosed nonexempt assets worth $49,075.70 available for her unsecured creditors.  She estimated that in a chapter 7 proceeding, administrative expenses would total $25,847.57, reducing the amount available to her unsecured creditors to $23,228.13.  If Debtor contributed only the $210.63 per month projected disposable income calculated under Official Form B 122C-2 to her Plan, her unsecured creditors would not receive as much in the chapter 13 as they would under chapter 7 as required under § 1325(a)(5) for confirmation.  Accordingly, under paragraph 2(a) of her Plan, Debtor has proposed to make 60 monthly payments of $500.00 to ensure that her unsecured creditors receive at least as much under a chapter 13 plan as they would in a chapter 7.[13]

Under paragraph 2(b) of the Plan, Debtor adopted the standard language of Alaska's form chapter 13 plan, Alaska Local Bankruptcy Form (AK LBF) 5, which provides for the commitment of annual PFDs for the term of the Plan estimated at $1,000.00 each.[14]  Thus, between the total monthly Plan payments ($30,000.00) and the estimated annual PFD payments ($5,000.00),

---

[9] ECF No. 12-7, p. 2 ($166.67/month x 12 months = $2,000.04/year).
[10] ECF No. 12-8, p. 2.
[11] *See* ECF No. 14.
[12] ECF No. 15.
[13] ECF No. 18, p. 2.
[14] *Id.*

Debtor's total commitment under the five-year Plan is $35,000.00.  Debtor proposes to use the Plan payments to fund the chapter 13 trustee's commission, Debtor's bankruptcy attorney fees, arrears on Debtor's secured debt, a priority unsecured tax claim, and proposed payments for Debtor's general unsecured creditors.  Under her Plan, Debtor proposes to pay $25,368.00 of her total unsecured debt, which exceeds the chapter 7 liquidation analysis.[15]  Finally, under Plan paragraph (2)(a), Debtor has added the following nonstandard sentence: "Alaska Permanent Fund Dividend proceeds received in excess of $1,000.00 per year and tax refunds shall count as pre-payments of monthly payments due under this provision."[16]

The Plan drew a negative recommendation for confirmation from Trustee, constituting a timely objection (Objection).[17]  Trustee objected to the use of any PFD amounts over $1,000.00 as "pre-payment" funding.  She argued that under Alaska Local Bankruptcy Rule (AK LBR) 3015-1(b)(1), PFD payments may not be included as part of a chapter 13 debtor's regular monthly plan payments.  Instead, Trustee claims all of the PFD annual payments, regardless of the amount, must be committed to a chapter 13 plan *in addition to* the regularly-scheduled monthly payments.[18]

At the initial confirmation hearing, counsel for Debtor (Mr. Crowther) disclosed that in order to satisfy the liquidation analysis under § 1325(a)(4),[19] Debtor was committing her Social Security income to her Plan payments, which she would otherwise not be required to commit

---

[15] ECF No. 18, p. 10.

[16] *Id.* at p. 2.  The court notes that the standard language of AK LBF 5, included in the Plan, also provides for the commitment of tax refunds under paragraph 2(c), as follows: "Debtor(s) [commits] all tax refunds to funding the plan.  Tax refunds will be paid in addition to the plan payments stated above."

[17] ECF No. 23.

[18] ECF No. 23, p. 1. Trustee also pointed out that the Plan failed to address a claim for arrears on Debtor's home equity line of credit in the amount of $774.40.  Given the court's denial of confirmation based upon the treatment of the PFDs, this issue can be addressed in an amended plan.

[19] Section 1325(a)(4) provides in pertinent part, "[T]he court shall confirm a plan if…the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."

4

pursuant to § 101(10A)(B).  Counsel reasoned that Debtor's addition to the monthly Plan payment of excess PFDs and tax refunds above the estimates would alleviate, if not obviate, the need for Debtor to rely on her Social Security income to satisfy her monthly Plan payments over the five-year Plan term.  The court requested supplemental briefing to permit the court to review Mr. Crowther's calculations and arguments in greater detail, and to give Trustee an opportunity to respond.

Debtor filed her supplemental brief in response to the Objection.[20]  She argues that "there is absolutely nothing in the statutory language of Chapter 13" that would require her to pay excess PFDs in addition to her ongoing monthly Plan payments.[21] Debtor further contends that AK LBR 3015-1(b) "establish[es] plan confirmation requirements or procedures that are not grounded in either the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure[.]"[22]

In her response, Trustee argues that the proposed Plan does not comply with the AK LBR and is contrary to public policy.[23]  Trustee also maintains that the Plan is inconsistent with § 1306(a), which expands the definition of property of the estate as provided in § 541 to include post-petition property acquired while a debtor is in chapter 13.  Trustee analogizes the PFD to an inheritance, and contends that § 1306(a) "brings into the chapter 13 estate windfalls received after confirmation."[24]  In support of her argument, Trustee cites the Fourth Circuit Court of Appeals' decision in *Carroll v. Logan.*[25]  In that case, the Fourth Circuit held that a debtor's post-confirmation inheritance was part of the chapter 13 bankruptcy estate to be distributed to the debtor's creditors via the debtor's chapter 13 plan.

---

[20] ECF No. 26.
[21] *Id.* at p. 6.
[22] *Id.*
[23] ECF No. 32, p. 2.
[24] *Id.* at p. 3.
[25] 735 F.3d 147 (4th Cir. 2013).

In her supplemental reply brief, Debtor reiterated that AK LBR 3015-1(b) and AK LBF 5 do not "implement underlying provisions of the Bankruptcy Code."[26]  Moreover, while Debtor concedes that § 1306 incorporates her PFD into her bankruptcy estate, she argues that it does not mandate how those funds are allocated.[27]  She further argues that if Congress intended a debtor's creditors to receive "windfall" income in addition to "projected disposable income," it would have so provided in the "extremely elaborate statutory mechanism" used to calculate what creditors should receive under a confirmed chapter 13 plan.[28]  Debtor concludes that her Plan satisfies § 1325(b), and to the extent AK LBR 3015-1(b) and AK LBF 5 attempt to modify that confirmation standard, they are invalid.[29]

**B.    LEGAL ANALYSIS**

The dispute before the court is exceedingly narrow in scope.  Consistent with Alaska's local rules and form chapter 13 plan, Debtor has committed to her Plan the future PFDs received within the five-year term.  Per the applicable local rule, she has estimated those payments at $1,000.00 annually.  The dispute centers upon application of any future amounts above the $1,000.00 estimates.  Debtor seeks to contribute any future annual amounts above $1,000.00 to pay down her total Plan payments of $35,000.00.  Trustee has objected to confirmation and argues that the entire PFD must be contributed to the Plan, whatever the actual payment may turn out to be.

1.    <u>The Local Rule and Form Chapter 13 Plan Are Valid</u>

Trustee contends that AK LBR 3015-1(b) and AK LBF 5 require chapter 13 debtors to contribute the entirety of the PFDs they receive during the term of their plans.  In 2002, the Local

---

[26] ECF No. 33, p. 1.
[27] *Id.* at pp. 2-3.
[28] *Id.* at p. 3.
[29] *Id.* at p. 8.

6

Rules Committee for the United States Bankruptcy Court, District of Alaska, revised AK LBR 3015-1 and AK LBF 5 to account for the inability to determine in advance the amount of annual PFD payments a debtor would receive during a chapter 13 plan commitment period.  AK LBR 3015-1(b)(1) provides: "The Alaska Permanent Fund Dividend is to be included in paragraph 2(b) of AK LBF 5 and may not be included in the regular periodic payments provided in paragraph 2(a)." These revisions removed PFDs from the monthly periodic payments to prevent debtors from understating their disposable income:

> Since the PFD is a once-a-year payment it should not be included in the periodic payments.  If a debtor can make monthly payments based on an assumed 1/12th of the PFD being distributed each month, it is more likely than not that the debtor is understating disposable income.[30]

In December 2017, the District further revised its form chapter 13 plan to conform to the national plan required by Fed. R. Bankr. P. 3015.1.[31]  The changes in AK LBF 5 were adopted under General Order No. 2017-1.  Paragraph 2(b) of the current form plan now states: "Permanent Fund Dividends received each year during the commitment period and for purpose of estimation under this Plan the amount of $1,000 per year will be used unless by local rule an adjustment is made…."  The combination of AK LBR 3015.1 and AK LBF 5 commits all PFDs received within the plan term to distribution through the plan, and requires the use of a placeholder estimate of

---

[30] *History, Background and Comments, Local Bankruptcy Rules, District of Alaska*, p. 15 (2015), *available at* https://www.akb.uscourts.gov/history-background-and-comments-local-bankruptcy-rules (last visited August 1, 2019).

[31] Fed. R. Bankr. P. 3015.1 provides that "[n]otwithstanding Rule 9029(a)(1), a district may require a Local Form for a plan filed in a chapter 13 case be used instead of an Official Form" if certain conditions are met.  "In December 2017, the U.S. Supreme Court, in accordance with 28 U.S.C. § 2075, amended [Fed. R. Bankr. P.] 3015. Pursuant to [Fed. R. Bankr. P.] 3015, as amended, Official Form 113 (the 'National Plan Form') must be used in all Chapter 13 cases, except to the extent a Local Form that complies with [Fed. R. Bankr. P.] 3015.1 has been implemented at the district level."  *In re Reichard*, 2018 WL 3323870, at *4 (Bankr. D. Ariz. July 5, 2018).

$1,000.00 for the annual PFDs as additional payments to the monthly plan payments.[32]   This provision remains in effect.

Debtor does not directly challenge the validity of either AK LBR 3015.1 or AK LBF 5. As previously noted, Debtor has committed her future PFDs to her Plan for the next five years.  Rather, she argues that the local rule and form plan impermissibly impinge on her right to determine the use of those post-petition PFDs.

Fed. R. Bankr. P. 9029(a)(1) empowers bankruptcy courts to make and amend local rules.[33] Debtor is correct, though, that local rules "shall not abridge, enlarge, or modify any substantive right."[34] Local rulemaking is appropriate when the practice is "(1) consistent with the Acts of Congress and Federal Rules of Bankruptcy Procedure; (2) not duplicative of the Code or Bankruptcy Rules; and (3) not used to limit or prohibit the use of the Official forms."[35]

The Rules Committee's stated reason for excluding the PFD from the regular periodic payments and providing for turnover in a lump sum was simple: to prevent debtors from understating their disposable income while ensuring performance.  This purpose is in line with "Acts of Congress" - in this case, the Bankruptcy Abuse Prevention and Consumer Protection Act, or BAPCPA: "'The heart of [BAPCPA's] consumer bankruptcy reforms ... is intended to ensure that debtors repay creditors the maximum they can afford.'"[36] Nor are the local rule and plan

---

[32] *Available at* https://www.akb.uscourts.gov/court-info/local-rules-and-orders/general-orders (last visited August 21, 2019).

[33] *See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 784 (9th Cir. 2007).

[34]  28 U.S.C. § 2075.  *See also Anwar v. Johnson*, 720 F.3d 1183, 1189 (9th Cir. 2013) (quoting *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 782 (9th Cir. BAP 2005)).

[35] Fed. R. Bankr. P. 9029(a)(1) ("Each district court…may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with – but not duplicative of – Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms."); *In re Shay*, 553 B.R. 412, 415 (Bankr. W.D. Wash. 2016) (citing *Healthcentral.com*, 504 F.3d at 784).

[36] *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 879 (11th Cir. 2010) (quoting H.R. Rep. 109–31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89); *see also Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64, 131 S.

duplicative of any other Code provisions or Bankruptcy Rules. Indeed, AK LBR 3015.1 specifically provides for a local chapter 13 plan so long as it conforms to the requirements set forth in that Rule. Debtor does not otherwise challenge the local plan. Finally, AK LBR 3015-1(b) does not limit or prohibit the use of Official Forms. Accordingly, the three-part test for determining the validity of a local rule is satisfied as to AK LBR 3015-1(b) and the local chapter 13 plan.

In reality, Debtor's quarrel is not with either the Rule or plan, but with Trustee's application of them to preclude her from using any amounts above $1,000.00 to prepay her total Plan amount. The court views the local rule and form plan as valid and neutral to the determination of Trustee's objection to Debtor's challenged plan provision. The local rule provides valid instruction as to the treatment of future PFDs for plan purposes, and the form plan merely provides a standard provision that may be modified. Debtor's challenged provision is just a nonstandard provision that must be measured against the applicable provisions of the Bankruptcy Code.

### 2. Confirmation of the Chapter 13 Plan

Section 1325 governs plan confirmation in chapter 13. Aside from any payments to secured creditors, the monetary requirements of a plan generally are informed by the liquidation analysis found in § 1325(a)(4), and the debtor's projected disposable income determined under § 1325(b). In this instance, the calculation of the minimum monthly plan payment under § 1325(b) is not at issue. This is, in large part, because Debtor's income includes a significant component from Social Security that is not included within the formulaic calculation of the monthly plan payment under § 1325(b).[37] More importantly, all parties agree that the liquidation analysis under

---

Ct. 716, 721 (2011) (a primary purpose under BAPCPA was "to help ensure that debtors who *can* pay creditors *do* pay them") [emphasis in original].

[37] *See* § 101(10A)(B); *Drummond v. Welsh*, 465 B.R. 843, 855 (B.A.P. 9th Cir. 2012).

§ 1325(a)(4) requires a significantly higher monthly payment than would otherwise be required using Debtor's projected disposable income.

In short, Debtor has complied with the mechanical aspects of §§ 1325(a) and (b) regarding the monthly funding of her Plan. She has exceeded the minimum monthly payment calculation based upon her projected disposable income as required under § 1325(b). Between her proposed monthly Plan payments, and the estimated $1,000.00 annual PFD payments, she has also satisfied the applicable liquidation analysis. Essentially, Debtor has created a "pot plan" and committed to pay $35,000.00 over the term of her Plan, which will result in her unsecured creditors receiving more than they otherwise would in chapter 7.

### 3. The PFD is Projected Disposable Income

Having determined that Debtor's monthly plan payments satisfy the liquidation analysis and calculation of monthly payments, the question presented is whether Debtor may confirm a plan provision that requires Trustee to apply any amounts received in excess of $1,000.00 as a "pre-payment" to her total obligation. Notwithstanding that Debtor has technically complied with the mechanical requirements of § 1325(b) to calculate her minimum monthly payment, as part of its inquiry under § 1325(b) the court must also examine whether the PFD payments are "projected disposable income" under the Code. If so, given Trustee's objection, § 1325(b)(1)(B) requires that all of the PFD funds received during the Plan period must "be applied to make payments to unsecured creditors under the plan."

The Supreme Court addressed the intersection between post-confirmation changes in a debtor's income and the requirements of § 1325(b)(1)(B) in *Hamilton v. Lanning*.[38] In its analysis, the Supreme Court observed that "BAPCPA left the term 'projected disposable income'

---

[38] 560 U.S. 505, 130 S. Ct. 2464 (2010).

undefined….”[39]  Thus the Supreme Court examined the meaning of the word "projected" under § 1325(b)(1)(B).  It concluded that "Congress did not amend the term 'projected disposable income' in 2005, and pre-BAPCPA bankruptcy practice reflected a widely acknowledged and well-documented view that courts may take into account known or virtually certain changes to debtors' income or expenses when projecting disposable income. In light of this historical practice, we would expect that, had Congress intended for 'projected' to carry a specialized—and indeed, unusual—meaning in Chapter 13, Congress would have said so expressly."[40]  Ultimately, the Supreme Court ruled that, "[c]onsistent with the text of § 1325 and pre-BAPCPA practice, we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are *known or virtually certain* at the time of confirmation."[41]

The PFD is a uniquely Alaskan phenomenon.  It is not, however, entirely incomparable with other assets.  Significant case law exists regarding two widely-known income sources in chapter 13 bankruptcy cases: (1) income tax refunds; and (2) inheritances.  Regarding income tax refunds, the majority of courts considering the subject have ruled that income tax refunds are

---

[39] *Id.* at 510, 2469.
[40] *Id.* at 516, 2473-74; *see also Itule v. Heath (In re Heath)*, 182 B.R. 557, 561 (B.A.P. 9th Cir. 1995).
[41] *Id.* at 524, 2478 [emphasis added].

included in "projected disposable income."[42]  In making such rulings, courts have noted that, unlike the PFD, tax refunds are "the product of debtors' wages."[43]

Inheritances, on the other hand, have no relation to a debtor's earned income.  Trustee has analogized the future PFDs to an inheritance.[44]  Numerous other courts have required chapter 13 debtors to commit assets acquired post-confirmation, such as inheritances, to their plans.[45]  Indeed, in *Dale v. Maney (In re Dale)*, the Bankruptcy Appellate Panel for the Ninth Circuit (BAP) ruled that a post-confirmation inheritance received by a debtor is property of the bankruptcy estate.[46] The Bankruptcy Court for the District of Montana followed *Dale* in *In re Rankin*: "[T]he Court concludes that the Debtor's post-petition inheritance is property of the estate under § 1306(a)(1)

---

[42] *In re Skougard*, 438 B.R. 738, 740 (Bankr. D. Utah 2010) ("A majority of courts…have concluded that a debtor is required to contribute tax refund income to the plan because tax refunds are at the disposal of the taxpayer."); *see also Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1203 (10th Cir. 2003); *Stacks v. Davey (In re Stacks)*, 588 B.R. 263, 266 (Bankr. N.D. Ga. 2018); *In re Alonso*, 570 B.R. 622, 631-32 (Bankr. D. Idaho 2017); *In re Murchek*, 479 B.R. 521, 533 (Bankr. N.D. Iowa 2012) (quoting *Skougard*, 438 B.R. at 740-41); *In re Mullen*, 369 B.R. 25, 35 (Bankr. D. Or. 2007); *In re LaPlana*, 363 B.R. 259, 265-266 (Bankr. M.D. Fla. 2007); *Vega-Lara v. Viegelahn (In re Vega-Lara)*, 2019 WL 4545613, at *4 (W.D. Tex. Sept. 9, 2019) ("Bankruptcy Courts within the 5th Circuit have repeatedly held that tax refunds are the property of the estate and thus debtors must turn them over to Chapter 13 trustees as disposable income.").
[43] *Skougard*, 438 B.R. 738, 740 (Bankr. D. Utah 2010); *see also In re Schiffman*, 338 B.R. 422, 427 (Bankr. D. Or. 2006) ("The rationale for including tax refunds received by the debtor during the life of the plan as future earnings is if a debtor is regularly receiving substantial tax refunds, the debtor probably is overwithholding, and consequently underestimating future income.").
[44] *See* ECF No. 32, p. 3.
[45] *See Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013) (inheritance); *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1241-43 (11th Cir. 2008) (inclusion of debtor's post-confirmation claims for underinsured motorist benefits in property of the estate was "consistent with the ability-to-pay policy underlying Chapter 13") (citing cases); *In re Moore*, 602 B.R. 40 (Bankr. E.D. Tenn. 2019) (approving a trustee's motion to modify the debtors' chapter 13 plan to distribute inheritance proceeds, less exemptions, to the debtors' creditors, subject to additional evidence re: feasibility); *In re Wilson*, 555 B.R. 547 (Bankr. W.D. La. 2016) (personal injury settlement); *In re Lombardi*, 551 B.R. 84 (Bankr. D. Mass. 2016) (inheritance); *In re Portell*, 557 B.R. 161, 171 (Bankr. W.D. Mo. 2016) (inheritance); *In re Gilbert*, 526 B.R. 414 (Bankr. N.D. Ga. 2015) (sale proceeds); *In re Mizula*, 525 B.R. 569 (Bankr. D.N.H. 2015) (inheritance); *In re Zisumbo*, 519 B.R. 851 (Bankr. D. Utah 2014) (inheritance); *In re Nott*, 269 B.R. 250 (Bankr. M.D. Fl. 2000) (inheritance); *In re Wirshing*, 2015 WL 3525061 (Bankr. D. Mont. June 3, 2015) (inheritance); *In re Tinney*, 2012 WL 2742457 (Bankr. N.D. Ala. July 9, 2012) (inheritance).
[46] *Dale v. Maney (In re Dale)*, 505 B.R. 8, 13 (B.A.P. 9th Cir. 2014) (quoting *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013)).

with which the Chapter 13 Trustee is authorized to modify the confirmed Plan to increase the amount of payments on claims under § 1329(a).'"[47]   The United States Bankruptcy Court for the Northern District of Alabama summarized the policy behind these rulings thusly:

> For the privilege of retaining encumbered assets and imposing a payment plan on secured creditors, a chapter 13 debtor…must make a long-term commitment, during which her post-petition property and wages are utilized to satisfy that commitment. And that commitment is subject to modification when circumstances change the debtor's ability to pay during the life of the case...If those changed circumstances result in additional post-petition estate property becoming available, the debtor's plan should be modified to increase the amount paid to unsecured creditors. Such additional property may be increased earnings, but most often comes in the form of a lump-sum payment from, for example, casualty insurance, settlement of a lawsuit, life insurance proceeds, or as in this case, an inheritance.[48]

The PFD is akin to a tax refund, as at the time of confirmation it is highly likely that Debtor will continue to receive it during the term of her Plan. But like an inheritance, PFDs are not derived from a debtor's labor and resulting wages.   In short, at confirmation Alaskan chapter 13 debtors are "virtually certain" to receive future PFDs in an unknown amount.   Utilizing the analysis set forth in *Hamilton*, the court concludes that Debtor's future PFDs constitute projected disposable income. Here, Trustee has objected to Debtor's proposed Plan because it does not commit all of her future PFDs received during her Plan term.   Trustee's objection triggers § 1325(b)(1)(B) and requires Debtor to provide all of her projected disposable income to her Plan.   Because Debtor attempts to limit the amount of the future PFDs payable to her Plan, the proposed chapter 13 Plan

---

[47] *In re Rankin*, 546 B.R. 861, 868 (Bankr. D. Mont. 2016).
[48] *In re Tinney*, 2012 WL 2742457, at *3 (Bankr. N.D. Ala. July 9, 2012) [internal citations omitted].  *See also Hamilton*, 560 U.S. at 520, 130 S. Ct. at 2476 (2010) (when a debtor's disposable income is higher during the commitment period, to exclude the income "would deny creditors payments that the debtor could easily make.").

fails to comply with § 1325(b)(1)(B).  Debtor may not dictate how any of her future PFDs will be applied.[49]

   4.  <u>Debtor's Post-Petition PFDs Received During the Term of Her Plan are Property of the Estate</u>

The parties further dispute whether Debtor's attempt to cap the estate's interest in future PFDs at $1,000.00 violates the provisions of § 1306(a)(1).  Section 541(a) generally defines property of the estate for every bankruptcy regardless of the chapter chosen.  Section 1306(a)(1), however, augments the general estate created under § 541(a).  In chapter 13, § 1306(a)(1) expands the property of a chapter 13 bankruptcy estate to include not only the property identified in § 541(a), but also "all property of the kind specified [in § 541] that the debtor acquires after commencement of this case but before the case is closed, dismissed or converted…."  Based on the language of § 1306(a)(1), the post-petition PFDs Debtor receives during the term of her Plan are property of the chapter 13 estate.[50]

Debtor posits that her proposed Plan provision does not violate § 1306 because the statute does not dictate any "distribution"; it only determines what comes into the estate.  In this regard, she is correct.  As noted in *In re Van Stelle,* § 1306 "addresses only the 'intake' side of the bankruptcy estate...  Other sections of the Bankruptcy Code set forth how property, once acquired by the bankruptcy estate, can then be removed from the estate...."[51]

---

[49] *See* 11 U.S.C. § 1322(a)(1) ("The plan shall provide for the submission of all or such portion of…future income of the debtor to the *supervision and control of the trustee* as is necessary for the execution of the plan….") [emphasis added].

[50] In her briefing, Debtor contends that § 348(f) supports a restrictive application of post-petition property in chapter 13.  Section 348(f) limits chapter 13 post-petition property of the estate from becoming property of a chapter 7 estate upon conversion except in instances of conversion in bad faith.  Section 348(f) has no bearing on this chapter 13 proceeding.  So long as Debtor remains in chapter 13 her PFDs will be part of her bankruptcy estate under § 1306(a).

[51] 354 B.R. 157, 167 (Bankr. W.D. Mich. 2006).

Section 1327(b) is one such section. [52]  It states that, "*[e]xcept as otherwise provided in the plan* or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor."[53]  Recently, the BAP reversed a bankruptcy court's decision to require a debtor to commit proceeds from the sale of nonexempt real property owned pre-petition where the confirmed plan provided that upon confirmation any scheduled property would vest in the debtor. In *Black v. Leavitt (In re Black),*[54] the debtor faced a similar situation to the instant case, where his plan payments were driven higher by his liquidation analysis.  To meet his obligations under the liquidation analysis, the debtor committed a lump sum payment of $45,000 to be paid from the sale or refinancing of his nonexempt real property.  After confirmation, the debtor sold the real property and received roughly $95,000 net of closing costs.  The debtor paid the $45,000 lump sum payment under his plan, but the chapter 13 trustee sought to compel the debtor to turn over the roughly $50,000 in proceeds remaining after payment of the lump sum plan payment.  These proceeds were attributable to post-petition appreciation on the pre-petition real property.  The chapter 13 trustee claimed the post-petition appreciation was property of the estate.[55]  The BAP held that once the real property revested in the debtor pursuant to the confirmed plan, "the debtor owns the property outright and…the debtor is entitled to any postpetition appreciation."[56]

The exact effect of § 1327(b) upon plan confirmation is unclear.[57]  But, as *In re Black* demonstrates, a chapter 13 estate is wise to specify how anticipated future assets affecting

---

[52] *Id.* (Section 1327(b) "is simply another one of the bankruptcy sections that addresses the disposition of estate assets in the context of a Chapter 13 proceeding.").
[53] 11 U.S.C. § 1327(b) [emphasis added].
[54] - B.R. -, 2019 WL 7344909 (B.A.P. 9th Cir. Dec. 31, 2019).
[55] *Id.* at 9.
[56] *Id.*
[57] *Jones v. Kendall*, 657 F.3d 921, 927-28 (9th Cir. 2011)(reviewing four approaches to harmonizing the interaction between § 1306(a)(1) and § 1327(b) "and determining whether and to what extent property of the estate revests in the debtor at plan confirmation."); *see generally* LUNDIN & BROWN, *Chapter 13 Bankruptcy*, (4th ed.), § 230.0 at ¶¶ 9-10 (discussing different views of vesting upon confirmation).

projected disposable income will be handled within a plan.  In this instance, Debtor's proposed Plan language has the effect of vesting any amounts of future PFDs received within the Plan term in excess of $1,000.00 back to Debtor, who then has elected to apply those funds to pre-pay her pot Plan.  Alaska recognizes that Debtor will receive additional post-petition PFDs during the term of her Plan and clarifies that such payments shall remain property of the bankruptcy estate upon confirmation.  Specifically, AK LBR 3015-1(b) confirms that the PFD is to be included in a debtor's chapter 13 plan.  AK LBF 5, at paragraph 2(b) further commits to the chapter 13 plan all PFDs "received each year during the commitment period."  Because the local chapter 13 plan excepts future PFDs from vesting in a debtor upon confirmation, § 1327(b) does not remove them from property of the estate and avoids the concerns raised in *In re Black*.  Instead, it commits the future PFDs as projected disposable income to a debtor's plan recognizing that while they may be uncertain in amount, it is sufficiently certain that a PFD shall be paid to necessitate its inclusion in the chapter 13 plan.  Debtor may not circumvent the requirement to pay all projected disposable income by capping the amount of future PFDs available to the chapter 13 estate and having any excess amount revest in her.

Unpersuaded, Debtor maintains that post-petition property cannot be used to improve the distribution to unsecured creditors.[58]  Restated in another section of her briefing, Debtor contends that the local rule and plan impinge on her right to determine when property of the estate revests under § 1322(b)(9).  These arguments miss the point.  At confirmation, Debtor is an Alaska resident with a statutory right to receive annual PFDs in an unknown amount.  Under § 1325(b)(1)(B), Debtor's creditors are entitled to have all projected disposable income applied to

---

[58] ECF No. 33, p. 2.

the Plan, and to have Trustee object to any proposed plan that seeks to terminate application of future assets to such Plan.

As stated by the BAP, "part of the statutory bargain inherent in chapter 13 is that the debtors must, for the prescribed life of the plan, run the gauntlet of exposure to trustee or creditor requests to increase payments."[59]  A debtor seeking to pre-pay a chapter 13 plan that pays less than 100% of the claims of her unsecured creditors "must follow the § 1329 modification procedure prescribed by Rule 3015(g)."[60]  Thus,

> In exchange for a § 1328(a) discharge of more debts than can be discharged in chapter 7, the debtor's increases in income are exposed to the risk of being captured by way of § 1329 modifications proposed by the trustee or an unsecured creditor. The debtor cannot short-circuit that exposure merely by prepayment, but rather must obtain a § 1329 plan modification after having given the notice required by Rule 3015(g).[61]

The United States Bankruptcy Court for the Western District of Washington addressed an argument similar to the one here raised by Debtor in *In re Shay*.[62]  The chapter 13 debtors in *Shay* included a plan provision automatically vesting all post-petition property in themselves instead of the estate in their chapter 13 plan. The debtors argued that the court's form chapter 13 plan abrogated their rights under § 1322(b)(9) by requiring the vesting of post-petition property with the chapter 13 trustee.[63]  The chapter 13 trustee countered, pointing out that their rights were not abrogated because "the plan can be amended via provisions in Paragraph XII and also Debtors do not have a right to retain post-petition property, which under 11 U.S.C. § 1306(a) is property of the estate, at least without giving the Trustee and creditors the opportunity to modify the plan to

---

[59] *Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (B.A.P. 9th Cir. 2007).
[60] *Id.*
[61] *Id.*; *see also Shay*, 553 B.R. at 419-20.
[62] 553 B.R. at 414.
[63] *Id.* at 415.

have the value of the property disbursed to creditors."[64]  Examining the interplay between §§ 1306

and 1327, the court explained:

> Section 1327(a)'s provision that property normally vests with the debtor upon confirmation should not be construed 'so as to suspend or supersede the more specific chapter 13 provision, § 1306(a)(1)'… Requiring additional post-petition income or the value of post-petition property to be paid to creditors is a two-step process. First…the income and property must be property of the estate. Then the Trustee or a creditor must move the Court under Section 1329 to modify the plan to increase the payments on claims of a particular class. The Trustee makes payments only in accordance with the terms of a confirmed plan…Without that second part of the process, the trustee cannot just take the funds from the debtor.[65]

Like the debtors in *Shay*, the substantive rights of Debtor are not abridged or modified by

the inclusion of excess PFD funds under paragraph 2(b) of AK LBF 5.  In fact, it is Debtor's pre-

payment proposal that would impermissibly modify a substantive right.

The court cannot confirm a plan that attempts to establish in advance that future monies

would vest in the debtor to the potential detriment of the unsecured creditors.  This is exactly the

effect of what Debtor proposes to do.  Though the potential harm to the estate is limited by the fact

that Debtor has complied with the local rules and applied $1,000.00 of the future PFDs to her Plan,

the effect is the same.  Debtor may not preclude application of future assets by having them revest

in her at confirmation.

5.  Creditor Windfalls and Modification of a Confirmed Plan

Debtor also contends that committing the entirety of the PFDs to the Plan in this instance

will result in a windfall for the creditors as she may be required to pay more than she is required

to pay to fund her Plan.  Debtor is particularly concerned because she is using her Social Security

income to fund the Plan to satisfy the liquidation analysis though such income is excepted from

---

[64] *Id.*
[65] *Id.* at pp. 417-18 [internal citations omitted].

the statutory definition of "current monthly income" employed to define "disposable income" under § 1325(b)(2). Debtor argues that to require application of all her future PFD payments on top of the monies she has committed to fund her Plan (including her contribution of the Social Security component) may compel her to use income statutorily excepted from the mechanical calculations of the monthly plan payment for confirmation to overpay her creditors.

Alaska's annual PFD payments are not a windfall, however. Courts have described "windfalls" as "unanticipated" or "unexpected."[66] Income from an unanticipated asset such as an inheritance is a windfall. As detailed above, such assets ordinarily are still applied to a chapter 13 debtor's plan through modification under § 1329(a). The PFD is neither unanticipated, nor unexpected, and Trustee is entitled to account for it at confirmation. As explained above, the PFD is virtually certain for Alaskan debtors. For this reason, it is *projected* disposable income that must be committed to the chapter 13 plan. Generally, a windfall would occur if an Alaskan chapter 13 debtor was *not* required to apply future PFDs to her plan.

This is not to say that Debtor is without recourse should she end up paying more than she otherwise would be required once the exact amounts of the PFDs are known. As one bankruptcy court has explained:

> Predicting the future, especially five years out, has always been problematic...BAPCPA has not suddenly made anyone prescient. The code only asks for a projection based on income and expenses when the plan is confirmed, and if subsequent events require a change for certain reasons, that is what modifications are for.[67]

Section 1329(a) permits a debtor to seek to modify a confirmed plan to "reduce the amount of payments on claims of a particular class provided for by the plan."[68] Such modifications may

---

[66] *See In re Flaming*, 2003 WL 22848925, at *3 (Bankr. D. Idaho Nov. 10, 2003) (citing cases).
[67] *In re Simpson*, 2008 WL 2705606, at *5 (Bankr. E.D. Wis. July 3, 2008).
[68] 11 U.S.C. § 1329(a)(1). *See generally* LUNDIN & BROWN, *Chapter 13 Bankruptcy,* (4th ed.) at § 265.1.

be made "[a]t any time after confirmation of the plan but before completion of payments under such plan…."[69]  The Supreme Court has ruled that the appropriate way to account for post-confirmation changes to a debtor's financial situation is to "use the method that the Code provides for all Chapter 13 debtors (and their creditors): modification of the plan in light of changed circumstances."[70]  To the extent that the actual payments from future PFDs diminishes the amount Debtor needs to contribute from her Social Security income, she may seek to reduce the monthly Plan payments, as may be appropriate.  Her unsecured creditors would not be harmed in this instance as they have no right or interest in Debtor's Social Security income.[71]

## C.    CONCLUSION

Because Debtor's proposed Plan does not commit PFD payments in excess of $1,000.00 received during the Plan period, it fails to meet the projected disposable income requirement under § 1325(b)(1)(B).  Debtor's Plan also impermissibly seeks to vest any PFD amounts over $1,000.00 in Debtor upon confirmation.  For these reasons, the court must deny confirmation.  The court will enter a separate order denying confirmation of the Plan, with leave to amend per LBR 3015-2(b). DATED this 17th day of January 2020.

BY THE COURT

_/s/ Gary Spraker_____
GARY SPRAKER
United States Bankruptcy Judge

Serve:  R. Crowther, Esq.
         E. LeRoy, Esq.
         Debtor

---

[69] 11 U.S.C. § 1329(a).

[70] *Ransom*, 562 U.S. at 80, 131 S.Ct. at 730 (discussing unanticipated post-confirmation expenses).

[71] Importantly, the burden to modify the chapter 13 plan in the future after confirmation is properly placed on Debtor in this instance.  In the overwhelming number of chapter 13 cases in Alaska, the debtors' future PFDs must be contributed to their plans.  To require the chapter 13 trustee to seek modification of those plans on an annual basis would result in a highly inefficient use of scarce resources, wasting time and money for all involved.

N. Jipping, Trustee
ECF Participants via NEF
Case Manager